**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TUPOU NETANE,<br><br>            Plaintiff,<br><br>      v.<br><br>WELLS FARGO BANK NA F/K/A/ WORLD SAVINGS BANK, FSB; THE BANK OF NEW YORK AS TRUSTEE FOR SECURITIZED TRUST WORLD SAVINGS BANK MORTGAGE PASS-THROUGH CERTIFICATES REMIC 30 TRUST; AND DOES THROUGH 100,<br><br>            Defendant. | Case No. 13-cv-04344 NC<br><br>**ORDER REFERRING AIRENE WILLIAMSON TO THE STANDING COMMITTEE ON PROFESSIONAL CONDUCT**<br><br>Re: Dkt. No. 42 |

   This order arises out of Airene Williamson's repeated misrepresentations to the Court regarding the identity of the plaintiff in this suit.  After reviewing her contradictory oral representations and written submissions, the Court finds that Airene Williamson "engaged in unprofessional conduct" under Civil Local Rule 11-6(a).  The Court therefore refers the matter to the Northern District's Standing Committee on Professional Conduct for further investigation and discipline if warranted.

## I. PROCEDURAL HISTORY

On August 14, 2013, Airene Williamson filed this suit on behalf of Tupou Netane, "an individual," in San Mateo County Superior Court. Dkt. No. 1-1 at 2. The complaint asserts causes of action for wrongful foreclosure, fraud, quiet title, and declaratory relief against defendants Wells Fargo and Bank of New York. *Id.* Williamson signed and verified the complaint under penalty of perjury as attorney for the plaintiff. *Id.* at 25-26.

On September 19, 2013, Wells Fargo removed the action to this Court based on diversity. Dkt. No. 1. On October 15, 2013, Wells Fargo moved to dismiss the complaint. Dkt. No. 9. Bank of New York joined the motion. Dkt. No. 13. On October 29, 2013, non-party Equity Growth Asset Management moved to intervene and expunge the notice of pending action (lis pendens) that Netane had filed in the Superior Court. Dkt. Nos. 1-1 at 59-61; 14.

On October 31, 2013, Williamson and her law office, Williamson Law Office, PLLC ("WLO"), moved for leave to withdraw as counsel for plaintiff Tupou Netane on the basis that "the relationship between the Plaintiff and WLO has already been formally terminated as of September 11, 2013." Dkt. No. 16 at 3. Williamson signed the motion to withdraw as "attorney for TUPOU NETANE." *Id.* at 4. The motion was further accompanied by a certificate of mailing in which an employee of WLO certified that on October 31, 2013, the motion was served by email and mail on Tupou Netane. *Id.* at 5.

The Court set the motion for hearing on December 11, 2013, and ordered both plaintiff and plaintiff's counsel of record to appear in person at the hearing. Dkt. No. 28. On December 4, 2013, Williamson filed a request that the Court "set aside its order requiring WLO to appear at the hearing on December 11, 2013, or, alternatively, to permit WLO to appear telephonically." Dkt. No. 30. In support of her request, Williamson repeated her assertion that the motion to withdraw was supported by good cause because "Plaintiff has already terminated WLO's services as her counsel as of September 11, 2013." *Id.* at 2. Once again, Williamson signed the request as "attorney for TUPOU NETANE." *Id.* at 3. An unsigned certificate of mailing accompanied the request. *Id.* at 4. The

certificate stated that Tupou Netane was served by email and mail. *Id.*

Because Williamson's motion to withdraw as counsel and subsequent request to set aside the order requiring personal appearance failed to include a supporting declaration or affidavit, as required by the Local Rules, the Court ordered WLO to file a declaration of facts supporting the requests. Dkt. No. 32. The Court ordered WLO to include facts showing (1) plaintiff's termination of WLO's services; (2) WLO's efforts to notify plaintiff of WLO's motion to withdraw as counsel and the Court's orders requiring plaintiff's personal appearance at the hearing on the motion; (3) plaintiff's consent to the motion to withdraw and WLO's efforts to ascertain plaintiff's position regarding the motion; and (4) any steps WLO took to avoid reasonably foreseeable prejudice to the plaintiff's rights, as required by California Rule of Professional Conduct 3-700(A)(2). *Id.*

In response to the Court's order, Williamson filed a declaration, stating under penalty of perjury that the motion to withdraw as counsel should be granted because "Mr. Tupou Netane has since passed away" and "Plaintiff's family/ representatives have already terminated WLO's services . . . ." Dkt. No. 33 ¶¶ 4, 7.

On December 11, 2013, the Court held a hearing on Williamson's motion to withdraw as counsel. Dkt. No. 36. Airene Williamson and Tupou Netane's daughter, Malissa Netane, appeared at the hearing. Dkt. No. 58 at 2. In response to the Court's questions, Williamson acknowledged that at the time she filed the complaint in state court, she knew that the plaintiff, Tupou Netane, was dead. *Id.* at 22.

The Court denied Williamson's motion to withdraw as counsel. Dkt. No. 36. The Court ordered WLO to file "a statement noting the death of plaintiff," as well as a status update informing the Court if counsel intended to request substitution of the plaintiff, seek termination of the case, or request more time. *Id.* The Court further ordered that, if counsel intended to request substitution of the plaintiff, she must inform the Court of the identity of the person she proposes to substitute and explain why that person is a proper plaintiff. *Id.*

In response, Williamson filed a declaration stating that "Tupou Netane Sr." died on January 9, 2011, which is more than two years before she filed the complaint. Dkt. Nos. 39

1  ¶ 6, 1-1 at 2.  The declaration further states that Malissa Netane, Tupou Netane's daughter,
2  "finally informed [Williamson's] office that upon further conferring with her family,
3  specifically her brother, the Tupou family has decided NOT to move forward with the
4  instant case against the named defendants," and that Williamson is in the process of
5  obtaining a stipulation of dismissal of the case.  *Id.* ¶¶ 7-9.

6        On December 17, 2013, to protect the rights of others who might be affected by
7  Court action, the Court ordered Williamson to serve certain Court orders and filings on
8  Malissa Netane, her brother, her mother, and any other family member or nonparty who
9  could be Tupou Netane's potential successor or representative or otherwise might be a party
10  with the right to assert the claims in the complaint.  Dkt. No. 40.  The Court also continued
11  the initial case management conference and ordered the parties and Equity Growth Asset
12  Management to file a joint report at least seven days prior to the January 15, 2014, case
13  management conference.  *Id.*  The Court ordered that the joint report advise the Court of the
14  parties' respective positions regarding the effect of the notice of plaintiff's death on this
15  litigation and the pending motions.  *Id.*  The Court did not receive a report in response to
16  this order until February 5, 2014.  Dkt. No. 52.

17        On January 8, 2014, Williamson filed a notice purporting to dismiss the case on
18  behalf of plaintiff "Tupou Netane."  Dkt. No. 41.  The notice states, "TO THIS
19  HONORABLE COURT:  Comes Now, Plaintiff TUPOU NETANE, by and through his
20  attorney of record, respectfully submits this Notice of Voluntary Dismissal of Action
21  pursuant to FRCP Rule 41(a)(1)(A)(i)."  *Id.* at 1:25-26.  The notice further states that "the
22  Plaintiff dismisses this case without prejudice pursuant to Rule 41(a)(1)(A)(i) with each
23  party to bear their own attorneys' fees and costs in accordance with the terms of the
24  settlement agreement between the Parties."  *Id.* at 2:6-8.  The accompanying certificate of
25  service stated that a WLO employee served the document on Malissa Netane and opposing
26  counsel.  *Id.* at 3.

27        On January 10, 2014, the Court ordered Williamson to show cause why the "Notice
28  of Voluntary Dismissal of Action" should not be stricken as an improper filing, since

Case No. 13-cv-04344 NC
ORDER REFERRING WILLIAMSON
TO STANDING COMMITTEE     4

1  Williamson previously represented that plaintiff Tupou Netane had passed away, and Tupou
2  Netane was therefore incapable of acting with or without counsel to dismiss the action.
3  Dkt. No. 42 at 5.

4      The Court further ordered Williamson to show cause in writing why she should not
5  be sanctioned under Federal Rule of Civil Procedure 11 or the Court's inherent power "for
6  presenting to the Court filings that contain factual contentions without evidentiary support,
7  legal contentions not warranted by law, and/or that were presented for an improper
8  purpose" in connection with the motion to withdraw as counsel. *Id.* at 6.  The Court noted
9  that such sanctions may include a formal reprimand, monetary sanctions, and referral to the
10 Northern District Standing Committee on Professional Conduct, the Chief Judge, or another
11 appropriate disciplinary authority in California or the Northern District.  *Id.*

12     Williamson responded to the order to show cause on January 27, 2014.  Dkt. No. 47.
13 In her response, Williamson stated for the first time that Tupou Netane's son, whose name
14 is also Tupou Netane, is the plaintiff in the case. *Id.* at 3 ("The complaint was filed on
15 August 14, 2013 with Son Tupou as the intended Plaintiff.").  However, Williamson
16 repeatedly referred to Tupou Netane (the father) as the "Proper Plaintiff" *Id.* at 2, 3, 5-15
17 ("Tupoe [sic] Netane the father (deceased) was and should have been the Proper Plaintiff in
18 this Complaint if he was still living[.]").

19     Williamson conceded in her response that "WLO should have been more precise in its
20 pleadings, and made it clear that the statements to which the court objects refer to the
21 Netane family, not Tupou Netane [the father] himself." Dkt. No. 47 at 6.  "However," she
22 argues, "it should be noted that this was not a case of WLO intentionally misleading the
23 court.  Rather, this was a case of imprecise labeling of the parties in pleadings filed by
24 WLO." *Id.*  Williamson continued, "[i]mprecise labeling and drafting aside, the statements
25 have evidentiary support to the extent that they refer to the Netane family, rather than
26 Proper Plaintiff." *Id.*

27     Williamson and defendants filed a joint status report on February 5, 2014. Dkt. No.
28 53.  Even though Tupou Netane (the son) is not deceased, Williamson continued to refer to

Case No. 13-cv-04344 NC
ORDER REFERRING WILLIAMSON
TO STANDING COMMITTEE
    5

the substitution of parties under Federal Rule of Civil Procedure 25(a), which governs substitution of parties when a party dies. Dkt. No. 53 at 2. Due to the conflicting representations about the plaintiff's identity, the Court ordered Tupou Netane (the son) to appear in person at the case management conference on February 12, 2014. *Id.*

As ordered, Tupou Netane (the son), together with Malissa Netane, appeared on February 12. Dkt. No. 55. In response to the Court's questions, Tupou Netane (the son) confirmed that he was the plaintiff in the case, he had reviewed the "Notice of Voluntary Dismissal of Action," and he wished to dismiss the case. *Id.* Tupou Netane (the son) also consented to the jurisdiction of a magistrate. *Id.* The other parties likewise consented to a magistrate's jurisdiction. Dkt. Nos. 6, 23, 24.

## II. DISCUSSION

Although Airene Williamson characterizes her conduct in this case as an instance of "imprecise labeling of the parties," her misconduct goes beyond imprecision or carelessness. Civil Local Rule 11-6(a) provides that "[i]n the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, in addition to any action authorized by applicable law, the Judge may . . . [r]efer the matter to the Court's Standing Committee on Professional Conduct . . . ." The Court finds that Williamson engaged in unprofessional conduct by repeatedly representing to the Court that the plaintiff in this case was the deceased Tupou Netane (the father), even though the plaintiff is actually Tupou Netane (the son). The Court therefore refers Williamson to the Standing Committee for further investigation and discipline if warranted.

**A.     Williamson's Representations that Tupou Netane (the Father) Is the Plaintiff**

In her motion to withdraw as counsel, Williamson initially represented to the Court that "Plaintiff" had terminated the attorney-client relationship:

> As of September 11, 2013, *Plaintiff and WLO formally terminated its attorney-client relationship.* In fact, notice of WLO's intent to withdraw as counsel was served on the Plaintiff on the same date, September 11, 2013.
>
> . . .
>
> This motion to withdraw should be granted because there is good cause.

Case No. 13-cv-04344 NC
ORDER REFERRING WILLIAMSON
TO STANDING COMMITTEE

6

> Under the rules of professional conduct, an attorney may withdraw for other good cause, specifically under CA ST RPC Rule 3-700(C)(5), wherein "client knowingly and freely assents to termination of the employment." In this case, *the relationship between the Plaintiff and WLO has already been formally terminated as of September 11, 2013.* This represents good cause for withdrawal.

Dkt. No. 16 at 1:25-2:2, 3:17-22 (emphasis added); *see also* Dkt. No. 30 at 2:12-19 ("The motion to withdraw was made with good cause: Plaintiff has already terminated WLO's services as her counsel as of September 11, 2013."). Then, when the Court probed the asserted basis for the motion, Williamson submitted a declaration representing that plaintiff passed away and that the "family/ representatives" had terminated the attorney-client relationship:

> THE WILLIAMSON LAW OFFICE, PLLC is the former counsel for Tepou [sic] Netane in the above-captioned matter.
>
> Upon information and belief and without further divulging attorney-client privilege information, *Mr. Tupou Netane has since passed away. WLO's main point of contact has been Mr. Tupou Netane's wife, and daughter, Malissa Netane.*
>
> Aside from payment issues, WLO and Mr. Netane's family mutually agreed to terminate its attorney-client relationship on September 11, 2013 due to possible complex probate issues.
>
> . . .
>
> The motion to withdraw was made with good cause: *Plaintiff's family/ representatives have already terminated WLO's services* as her counsel as of September 11, 2013.
>
> Since the termination of the attorney-client relationship, Plaintiff's family/ representatives have not respond to WLO's repeated attempts to make contact over the last couple months.

Dkt. No. 33 ¶¶ 3-5, 7-8 (emphasis added).

Williamson's declaration unmistakably represented to the Court that the plaintiff in the case was Tupou Netane (the father). Williamson filed the declaration in response to the Court's order to provide facts regarding "*plaintiff's* termination of WLO's services" and "*plaintiff's* position regarding the motion [to withdraw]." Dkt. No. 32 at 2 (emphasis added). The first sentence quoted above refers to Tupou Netane as the plaintiff and former client of WLO while the sentence immediately following it informs the Court that Tupou Netane has passed away. Dkt. No. 33 ¶¶ 3-5. Moreover, the statement that "Mr. Tupou

Netane has since passed away" is irrelevant if the plaintiff is Tupou Netane (the son). *Id.* ¶ 4. Given that Williamson offered the death of Tupou Netane (the father) as a fact supporting her motion to withdraw, the Court could only infer that Tupou Netane (the father) was the plaintiff.

Williamson's description of family relations in the quotation above further shows that she was representing to the Court that Tupou Netane (the father) is the plaintiff. Given that Williamson's primary contacts in the case were "Mr. Tupou Netane's *wife*, and *daughter*, Malissa Netane," the wife and daughter must be "Plaintiff's family/ representatives" who "already terminated WLO's services." *Id.* ¶¶ 4, 7 (emphasis added). Malissa Netane, however, is the daughter of Tupou Netane (the father), not the daughter of Tupou Netane (the son). Williamson provided no explanation of why "Plaintiff's family/ representatives" would have the right to terminate WLO's representation of plaintiff if plaintiff was alive. The Court could therefore only interpret Williamson's remarks as representations that Tupou Netane (the father) was the "Plaintiff" in this case.

The statements Williamson made at the hearing on December 11, 2013, further misled the Court about the plaintiff's identity. Dkt. No. 36. Although the Court was later informed that Tupou Netane (the son) is the plaintiff, Williamson did not say so during the first hearing. Dkt. No. 58. Instead, Williamson made contradictory assertions about the plaintiff's identity, first saying that the plaintiff is the estate of Tupou Netane (the father), then saying Tupou Netane (the father) is the plaintiff, and finally reaffirming that the plaintiff is Tupou Netane (the father).

First, Williamson took the position that the plaintiff in the case is Tupou Netane's Estate:

> THE COURT: Ms. Williamson, was this case filed on behalf of the estate? I'm a little confused.
>
> MS. WILLIAMSON: That was the case, your Honor. But at that time, we were under the belief that the mother may have had standing on this. . . .

Dkt. No. 58 at 10. Williamson then said that the plaintiff was Tupou Netane (the father) and that she knew he was dead when she filed the complaint:

| | |
|---|---|
| 1 | THE COURT: He is the Plaintiff in the case. So the complaint which was filed in State Court on August 14th, 2013 says — comes now Plaintiff Tupou Netane, and it says Plaintiff is now resident of San Mateo County. *And what you're telling me is he was dead at that point in time?* |
| 2 | |
| 3 | |
| 4 | MS. MALISSA NETANE: Yes, sir. |
| 5 | MS. WILLIAMSON: *Right, your Honor.* |
| 6 | THE COURT: All right. And Ms. Williamson, you're telling me you didn't know that? |
| 7 | MS. WILLIAMSON: Well, *I know that*, your Honor . . . . |

Dkt. No. 58 at 15 (emphasis added); *see also* Dkt. No. 58 at 23 ("THE COURT: So I'm not sure I understand your question—your answer. *So at the time you filed this complaint in this case in 2013, did you know that Tupou Netane was dead?* MS. WILLIAMSON: *Yes, your Honor.*" (emphasis added)). In response to additional clarifying questions, Williamson continued to represent to the Court that Tupou Netane (the father) was the plaintiff:

> THE COURT: It's not — I am focusing on something much less complicated than a complex probate matter, and that is *the first line of this complaint seems to assert that there's someone who is alive who is actually dead, and that's who you filed the —*
>
> MS. WILLIAMSON: *Right.* And you know, your Honor, I think — my apologies, your Honor.
>
> I think the confusion was — and it's a confusion that I probably — I will have to admit, it's my confusion, is that due to the name — well, unique name, *I named the father instead of the mother as the executor.* . . .

Dkt. No. 58 at 16 (emphasis added). The Court could only infer from Williamson's responses that the plaintiff was the deceased father, Tupou Netane. *Id.*

Although Malissa Netane said during the December 11 hearing that she thought her brother, Tupou Netane (the son), might be the named plaintiff, Williamson never took that position:

> MS. MALISSA NETANE: So when we had originally hired Jackson & Elrod, they had required numerous documents in regards to my father and the estate, which we did, in fact, send them my father's death certificate, which was at the very beginning of what we had talked to them about counsel.
>
> So I was confused as well when this had come out and it said my father's name. *My brother's name is the same, except he's a junior, and so I thought maybe they were doing that because of my brother, but it seems that it was my father.* . . .

Case No. 13-cv-04344 NC
ORDER REFERRING WILLIAMSON
TO STANDING COMMITTEE

9

Dkt. No. 58 at 13 (emphasis added). Williamson suggested that Tupou Netane (the son) might be able to continue the case on behalf of the family, but she did not say that he was the plaintiff in the action:

> MS. WILLIAMSON: . . . But I — another issue, your Honor, is that I believe the mother has some medical issues . . . . I don't know if she can continue on this case. So there has to be a decision whether or not Malissa *or perhaps the junior, the brother may continue this. I don't know.*

Dkt. No. 58 at 21 (emphasis added). Although Williamson made contradictory statements about the plaintiff's identity at the beginning of the December 11 hearing, her ultimate position on the issue was consistent with her prior filings in representing to the Court that the named plaintiff was the deceased father, Tupou Netane.

**B.    Williamson's Belated Disclosure That the Plaintiff Is Tupou Netane (the Son)**

Despite Williamson's representations at the first hearing that plaintiff was dead, Williamson filed a notice purporting to dismiss the case on behalf of plaintiff. Dkt. No. 41. The notice states, "TO THIS HONORABLE COURT:  Comes Now, Plaintiff TUPOU NETANE, by and through his attorney of record, respectfully submits this Notice of Voluntary Dismissal of Action pursuant to FRCP Rule 41(a)(1)(A)(i)." *Id.* at 1:25-26. In light of Williamson's prior representations, it appeared that a deceased person—who lacked capacity to authorize the filing—sought to dismiss the action. The Court therefore ordered Williamson to show cause "why [she] should not be sanctioned for presenting to the Court filings that contain factual contentions without evidentiary support, legal contentions not warranted by law, and/or that were presented for an improper purpose in violation of Rule 11(b)." Dkt. No. 42 at 6-7.

In her response to the order to show cause, Williamson asserted for the first time that Tupou Netane (the son) had always been the plaintiff in the case. Dkt. No. 47 at 3. She wrote:

> At the time the complaint was filed – naming Son Tupou as the Plaintiff (who is believed to have initial standing on the case as beneficiary of the trust), WLO, J&E, and the Netane family (Malissa and Tupou) were all under the belief that the home was owned by the family trust. Exhibit A. *The complaint was filed on August 14, 2013 with Son Tupou as the intended Plaintiff.*

*Id.* (emphasis added).

To address Williamson's conflicting representations, the Court held a second hearing on January 29, 2014. Dkt. No. 51. At that hearing, Williamson testified under penalty of perjury that before she responded to the order to show cause on January 27, 2014, she had always represented to the Court that the plaintiff was Tupou Netane (the father):

> THE COURT: . . . [A]t all times before January 27th, the assertions were that the named plaintiff in this case was Tupou Netane Senior.
>
> MS. WILLIAMSON: Correct.

Dkt. No. 56 at 5-6. Despite that admission, Williamson then asserted that Tupou Netane (the son) had always been the plaintiff in the case:

> MS. WILLIAMSON: . . . [W]hen we first filed the Complaint, *it was always the contemplation that it was Tupou Netane, the son, that was the plaintiff* since he was one of the beneficiaries of the trust.

Dkt. No. 56 at 7 (emphasis added).

Williamson continued to contradict her earlier representations when the Court asked why her declaration referred to the death of Tupou Netane (the father) as a reason for granting the motion to withdraw:

> THE COURT: . . . [I]n your declaration filed on December 9th — why did you need to file a declaration that Mr. Tupou Netane has passed away if he was not the plaintiff in the case? Why did that matter?
>
> MS. WILLIAMSON: Because I would like to disclose, Your Honor, that I think, in my legal opinion, and other people might disagree with me, that *it should have been the senior who should have been the plaintiff* because he is — their father is the record owner of the property. He should be the right — obviously, he's deceased now, but I think there should have been a probate proceeding that transfers the title from the father to the trust or to the son or to Malissa.
> And I'm told today probably the son — I think they still have a cause of action, but that's my legal opinion, that *it should have been the senior from the very beginning*, either through a probate proceeding, that should have been the proper plaintiff. And that's still my opinion to this day. People disagree with me, but that's my opinion.

Dkt. No. 51 at 10-11 (emphasis added); *see also* Dkt. No. 47 at 15 (Williamson writing in response to the order to show cause that "Tupoe [sic] Netane the father (deceased) was and should have been the Proper Plaintiff in this Complaint if he was

still living[.]").

Even after the second hearing, Williamson made conflicting representations about the plaintiff's identity. On February 5, 2014, Williamson and defendants filed a joint status report. Dkt. No. 52. Despite telling the Court at the second hearing and in response to the order to show cause that the plaintiff in the case is Tupou Netane (the son), Williamson continued to refer to substituting a party for Tupou Netane (the father) under Federal Rule of Civil Procedure 25(a): "[N]one of the Netane family wishes to be substituted as a proper plaintiff. Rather than wait for the 90 day period to pass pursuant to FRCP 25(a), WLO filed the Notice of Voluntary Dismissal on [Docket # 43]." Dkt. No. 52 at 3. Rule 25(a), however, is not relevant to this case unless the plaintiff is Tupou Netane (the father), since Rule 25(a) describes the procedure for substituting a party after a party dies, and Tupou Netane (the son) is alive.

Because Williamson repeatedly misled the Court by representing that Tupou Netane (the father) was the plaintiff both in written submissions and during hearings, the Court was unable to settle the issue of the plaintiff's identity until Tupou Netane (the son) appeared at the hearing on February 12, 2014. Dkt. No. 55. At that hearing, Tupou Netane (the son) confirmed that he is the plaintiff in the case and that he wishes to dismiss the case. *Id.*

## III. CONCLUSION

"Truth is not a weather vane. It does not veer when the winds of self-interest change. It remains constant." *Dep't of Transp., State of Ill. v. Coe*, 445 N.E.2d 506, 506 (Ill. App. Ct. 1983). Airene Williamson repeatedly misled the Court about the plaintiff's identity in this case. Seeking to withdraw as counsel, Williamson filed a bare-bones motion, stating that she should be relieved from her representation because plaintiff terminated the attorney-client relationship. When the Court ordered Williamson to submit a supporting declaration, Williamson represented that Tupou Netane (the father), who died before Williamson filed the complaint, was the plaintiff. She continued to represent that the

deceased father was the plaintiff during the first hearing on December 11, 2013. Despite her representation that the deceased father was the plaintiff, Williamson filed a notice of voluntary dismissal purporting to dismiss the case on behalf of plaintiff. It was only in response to the Court's order to show cause regarding sanctions that Williamson for the first time asserted that Tupou Netane (the son) is the plaintiff. She then continued to make inconsistent statements about the plaintiff's identity at the second hearing on January 27, 2014, and in her later-filed joint status report.

To resolve the confusion over Williamson's misleading misrepresentations, the Court expended significant judicial resources, issuing four orders, holding three hearings, and reviewing multiple filings. Williamson's misrepresentations also delayed resolution of the pending motions, including the motion to expunge the notice of pending action. The Court finds that Airene Williamson engaged in unprofessional conduct and therefore refers the matter to the Northern District's Standing Committee on Professional Conduct for further investigation and discipline if warranted. Although the Court's order to show cause referred to possible sanctions under Rule 11, the Court exercises its discretion and does not make a determination as to whether such sanctions are appropriate because no party seeks sanctions and no member of the Netane family wishes to pursue the case. Pursuant to Local Rule 11-6(e), the Court orders the clerk to refer the matter to the Standing Committee. The Court also orders Williamson to serve a copy of this order on plaintiff, Tupou Netane (the son), Malissa Netane, and Elenoa Netane, and to file proof of service by April 8, 2014.

IT IS SO ORDERED.

Date: April 1, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge